ELIZABETH D. ROBINSON *et al. vs.* TOWN COUNCIL OF
NARRAGANSETT.

MAY 10, 1938.

PRESENT: Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is a petition for a writ of *certiorari* brought under the provisions of public laws of 1928, chapter 1277, January session, to secure a review of the decision of the respondent town council, acting as a "Board of Zoning Review", denying a petition for an exception to the zoning ordinances of the town of Narragansett.

The writ was issued, and, in accordance with its mandate, the record of the board relating to the matter in issue was duly certified to this court. This record includes a transcript of the proceedings at the public hearing before the board, which will be hereafter more fully discussed by us.

The statute authorizes the town council of Narragansett to divide the whole territory of the municipality into districts, "in accordance with a comprehensive plan", for trade, industry, residence or other purposes, and to regulate and restrict the use of the land and buildings in such districts "for the purpose of promoting health, safety, morals or general welfare." It also provides that: "Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the town." The statute further provides that the town council "shall in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of any ordinance," and that any person aggrieved, claiming that a decision of the town coun-

cil is "illegal or unreasonable in whole or in part" and specifies the grounds therefor, may bring *certiorari* in this court to review such decision.

Acting under this statute the town of Narragansett passed a zoning ordinance dividing the town into districts, among which are included "Residence B" district and "Business D" district. The former permits the use of premises therein included for two-family dwellings, boarding and rooming houses; the latter, in addition to these uses, permits the use of land for a commercial bath house, bathing beach or restaurant. Section 13 of the ordinance provides that: "When in its judgment the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be substantially or permanently injured, the Town Council acting as a Board of Review may in a specified case after a public notice and hearing and subject to appropriate conditions and safeguards, authorize special exceptions to the regulations herein established." Subdivision 4 of this section permits "the location in any use district of . . . a commercial bath or boat house", and subdivision 8, as amended, permits "the location in a residence district of any use authorized in a Business D district; provided there shall be on file with the said board, a petition, duly signed and acknowledged, of the owners of 75% of the area of all the lands within a distance of 600 feet as the said board shall have determined to be especially affected by such proposed use or structure."

The Point Judith lighthouse in the Town of Narragansett, which juts out into the Atlantic Ocean, is the most southern point of the mainland of this state. The petitioners are the owners in fee as tenants in common by inheritance of some eighty acres of land in the shape of an imperfect and thick Roman capital "L", with a stem which, starting inland, gradually broadens as it extends in a southerly direction and approaches the shore. The outer line of the entire base of this letter "L" is irregular and borders on the Atlantic

Ocean. Adopting this crude simile for purposes of general description, we find that the part of the base, which extends eastward from the stem, excluding the base of the stem itself, is bounded on its southern or outer line by the Atlantic Ocean, on the east, by land of the United States government used for lighthouse purposes; on the north and northeast by Ocean Road; and on the west by a narrow way, leading south from Ocean Road to a plot of land on the Atlantic Ocean, about one and one half acres in area, situated at the southwest corner of the tract under consideration, which plot of land is owned by the United States and used by its coast guard service. This portion of the petitioners' land contains some twenty-one and one half acres of land and has an average width of about eight hundred feet from Ocean Road, on the north, to the Atlantic Ocean, on the south.

The first of the two parcels of land which the petitioners ask to be excepted from the provisions of the zoning ordinance consists of about three acres of this general tract, irregularly rectangular in shape, about two hundred feet deep and with a frontage on the Atlantic Ocean of some eight hundred and twenty-five feet, as its southern boundary. This parcel of land, which we will identify as parcel No. 1 for convenience, is bounded on the west by the land of the United States used for its coast guard service, and on the north and east by other land of the petitioners included in the twenty-one and one half acre tract above described, with its northerly line some six hundred feet south of Ocean Road and its easterly line six hundred feet west of the land of the United States where the lighthouse is located.

The remainder of the eighty acres of land owned by these petitioners, which may be roughly compared to the whole stem of the Roman capital "L", including its part of the base line, is bounded on the east for over twenty-eight hundred feet by Ocean Road and for some six hundred feet by the way leading south from that road to the land of the United States used by its coast guard service; on the north

by land formerly of William H. Knowles; on the west by some two hundred acres of land of T. A. L. Greene and about three acres of Horace Wilcox; and on the south for some sixteen hundred eighty feet by that part of the Atlantic Ocean, commonly known as the Harbor of Refuge. All the land east and north of Ocean Road, as it bounds the petitioners' entire property, to the Atlantic on the east, is owned, with few minor exceptions, by Amasa St. Onge.

The second of the two parcels of land which the petitioners ask to be excepted from the provisions of the zoning ordinance, hereinafter identified by us as parcel No. 2 for convenience, comprises some thirteen acres of the petitioners' tract of land last above described, and is located at the base of the letter stem above mentioned. It is irregular in shape, and some five hundred and seventy-nine feet deep at its deepest point, and includes all of the ocean frontage at the base of the stem, with the exception of about three hundred feet west of its westerly boundary. It is bounded easterly by the United States land used by the coast guard service and the way leading thereto from Ocean Road; northeasterly by the curve in Ocean Road, as it turns from a southerly to an easterly direction, forming the inside angle of the Roman capital "L"; and on all other sides by land of these petitioners.

The petition in the instant case, with a plat attached thereto, which we have used in gathering the above general descriptions, prays that the zoning board of review permit a change in the classification of parcels No. 1 and 2, heretofore described and so identified, from Residential B district to Business D district, so that they may be used "for a commercial bathing beach and commercial bath or boat houses or stores for retail trade or commercial recreation uses." It alleges that the land for which the exception is claimed cannot be profitably used for any of the purposes permitted in Residence B district, and that it is peculiarly suitable for the uses for which the petition prays it may be used; that

the property in the neighborhood will not be "substantially impaired by permitting the uses prayed for;" and that the petitioners are the owners of "75% of the area of all lands within a distance of 600 feet" of the land in parcels No. 1 and 2. This petition was duly advertised and a hearing had thereon. .

The town solicitor of Narragansett was present at the hearing to advise the board. The petitioners and a few remonstrants appeared either personally or through counsel, the principal remonstrant being Amasa St. Onge. There were three remonstrances in writing filed with the board from property owners, bearing in all thirty-five signatures. Where the property represented by these remonstrants was located in relation to parcels No. 1 and 2 does not appear. One of these remonstrances, which is typed and signed by Amasa St. Onge, Viola I. St. Onge, George H. Tooker, Esther L. Tooker and nineteen others, sets forth that they "object to any changes of the Zone to Margaret D. L. Robinson Estate to permit them to operate a Camp Ground at Point Judith. . . . The three camp grounds that are now operating in a residential district should be stopped." It is to be noted here that the petition in this case says nothing about "camp grounds", and further that the existing three camp grounds mentioned in the remonstrances are neither identified nor located in reference to parcels No. 1 and 2.

The evidence shows that this section of Point Judith consists mainly of unimproved land, with scattered dwellings and business places, the latter being permitted either as nonconforming uses prior to the passage of the ordinance or by variance of the ordinance after its passage. The business places which are closest to petitioners' parcels No. 1 and. 2 are conducted by St. Onge and Tooker, who signed the abovementioned remonstrance. In these places they sell lunches, soft drinks, canned goods and other incidentals for the accommodation of transients.

The testimony for the petitioners, in substance, is that they are unable to use any of their land for farming purposes, because of the generally exposed position of land in that immediate section; and that, while they had received a few inquiries in the past for the purchase of some of it for commercial uses, no inquiry had been made for the purchase of any for residential purposes. Referring more particularly to parcels No. 1 and 2, their testimony is to the effect that the land included in those parcels is bleak, treeless and covered with scattered scrub and brush; that, however, it has a good beach, which makes it adaptable for development as a bathing beach and commercial uses incidental thereto; and that, unless they are permitted to use this land for such purposes, it cannot be profitably used in any way.

The petitioners' testimony further shows that in the summertime and under present conditions, trespassers are continually tearing down the signs and fences on their land in order to reach parcels No. 1 and 2; that they overrun the land on foot and by automobile in groups of various sizes to reach the shore of those parcels for bathing, picnicking, and other purposes; and that unrestrained conduct on their part results in obnoxious practices and unsanitary conditions, which the petitioners cannot control because, deriving no income from the land, they cannot hire attendants for the necessary supervision. Their contention in this respect is that the use of parcels No. 1 and 2 for commercial purposes, under reasonable regulations properly enforced, would avoid these conditions, to the common benefit of all.

No testimony under oath was presented in behalf of the remonstrants; but Amasa St. Onge, who was present at the hearing with counsel, was called and sworn as a witness at the request of counsel for the petitioners, for the apparent purpose of showing the nature and extent of his business on land within a relatively short distance of parcels No. 1 and 2, and, also, his interest in objecting to their petition. It appears from this testimony that St. Onge conducts a clam-

bake house and frankfort stand on his land, with the privilege of parking for his customers; that he carried on this business since 1930, and that when the zoning law was passed in 1932, he filed a petition for an exception from its terms, alleging that: "The nature of this land, its location, and the purposes to which it is most naturally adapted and may be most advantageously used for the benefit of said Town of Narragansett as well as for the owner of said property, are such that said property should be zoned as Business 'D' district rather than as Residence 'B' district. Your petitioner represents the said change in said district will serve the public convenience and welfare and that the appropriate use of neighboring property will not be substantially nor permanently injured in the rezoning of said parcel of real estate." His testimony also shows that over the objection of twenty-eight persons, some of whom are the same persons who object in the instant case, his petition was granted. It further appears that he had sold a few lots for residential purposes "on the acreage . . . not on the shore"; that he had solicited the signatures on the typed remonstrance in this case hereinbefore mentioned and that some of the remonstrants whose names appear thereon did not own any land "within a half mile" of parcels 1 and 2.

At the conclusion of the sworn testimony, only four persons, including St. Onge, stated their views in general terms in opposition to the petition. T. A. L. Greene, who owns some two hundred acres to the west of the petitioners' land, after expressing his belief that the zoning law was not "right anyway", stated that, with the exception of twenty-five acres which he had sold to three persons, he could sell the rest of his land "to no one, because it is zoned for residential"; that: "I don't object to it (the present petition) and I ain't in favor of it"; and that: "I want to go on record that, if this Robinson land is to be rezoned, I want mine to go on." It was only after he was informed by a member of the board

that "he must object" that he said: "Yes, I object. I am all zoned. If you change one, change the other one."

Amasa St. Onge, speaking now as a remonstrant and not as a witness, said: "I have thirty acres more that I am not getting one cent out of. I had to go to work and pay to get the hay cut off to keep it clean. But I am trying to get people to come down and build. . . . We have got to say 'Come down and build. . . . It is residential and *we* will protect you.' " (italics ours) The third person to voice an objection, a Mrs. Bergstrom, complained of undesirable conditions existing in the immediate vicinity of her property, which was not definitely located. When counsel for St. Onge attempted to interpret her position by saying that she did not "want to see the whole of Point Judith go", Mrs. Bergstrom answered: "No, I am only speaking for myself. These people have their own problems." The last remonstrant was George H. Tooker, who stated that a former building commissioner refused him permission for an addition to his store on the ground that it was in a residential section. He, however, sought no ruling from the zoning board of review at that time. It is worth pointing out at this time that no objection, either orally or in writing, was made by the United States government or by Horace Wilcox, whose lands immediately adjoin parcels No. 1 and 2.

The attitude of the board at this hearing is material. When counsel for the petitioners offered in evidence St. Onge's petition of 1932 for the rezoning of his land, to show the changes that had occurred in that locality and also St. Onge's interest in the matter then under consideration, the chairman admitted it, but shortly thereafter, following an objection by counsel for the remonstrants, in which he was supported by the town solicitor, on the ground that St. Onge's petition was purely a collateral matter, the chairman reversed his position and, taking a vote of the board, excluded that petition. Counsel for the petitioners then asked that the certified copy of St. Onge's petition which he was using be marked

for identification by the clerk of the board. Upon denial of this request, counsel stated to the board that he would himself identify the petition by affixing his signature thereto, which he did. A similar objection was made and sustained when counsel for petitioners offered in evidence an original zoning map of the town, showing a number of exceptions to the zoning ordinance which had already been allowed in that section. In asking for a vote of the board in reference to the admission of this exhibit, we find the chairman of the board saying: "We can render a decision without hearing any evidence at all, but we are kind enough to hear some. . . . We are sitting here today and our only business is that of today; things beyond and back of us haven't anything to do with it." Counsel for the petitioners was again obliged to mark this proposed exhibit for identification in the same manner as above described.

Evidence offered by the petitioners was rejected in a number of instances, following comment from the town solicitor or the attorney for the remonstrants that the petitioners were "attempting to make a record for the supreme court," or that they were not going to permit the "building up of a record for the purpose of using it in a higher court." This situation reached its climax when counsel for the petitioners, apparently becoming aware that the clerk of the board was not keeping a record of the testimony, which fact was confirmed on inquiry, moved that the board consider incorporating, as part of its official record, a transcript of all the evidence which had been taken at his request by a superior court stenographer. The stenographer's integrity and ability were admitted but the motion was nevertheless denied, it being said in connection with such ruling that the hearing was not held to "establish any facts here at all for the purposes of a higher court. The mere fact that would be established is that the Council decided one way or the other after hearing testimony." At the close of the hearing, however, counsel for the

'petitioners was informed that the "Council would appreciate a copy of this record" made by the stenographer.

The record of the hearing which was kept by the clerk of the board is but a bare, general outline of the proceedings. It does not contain even a summary, however brief, of the substance of what was said by those who testified or spoke at the hearing. The decision of the board is just as brief, for, other than identifying the petition, the members of the board, and the time of the hearing, all it says is "Voted— That said petition be and the same is hereby denied." Without the petitioners' transcript, which was ultimately requested by the board, this court would have been at a loss to know what facts were before the board for its consideration and decision. In view of this request and of the further fact that no objection was raised to this transcript before us, we will consider it as part of the official record of the board, especially since it does not in any way contradict that record.

The property rights of landowners are subject to such reasonable limitations in their enjoyment as may be imposed by the legislature under the lawful exercise of the police power of the state. This is a power to reasonably regulate and restrict the use and the enjoyment of property by the owner in the public interests, for the conservation of the public health, safety, morals and welfare. In the lawful exercise of this power, there is no taking of property from the owner, and any injury that he may suffer by a reasonable limitation in the use of his property is compensated by sharing in the common benefits that the legislature by reasonable regulation intends to secure.

Zoning statutes and the ordinances which they authorize come within this class of legislation. The primary object of such laws is to protect the public health, safety, morals and welfare. This type of legislation is not to be confused with the exercise by the state of the right of eminent domain, under which the state takes private property from a landowner and appropriates it to a public use, but gives him just

compensation for whatever is thus taken. Zoning laws *regulate* the use of property and may impair the owner's rights therein to some reasonable extent without compensation, because the legislature, acting under the police power of the state, deems the free exercise of such rights detrimental to the public interests. No landowner can complain, even though he, in common with others similarly situated, may have to forego some use of his property, so long as the power to enact zoning laws is exercised in the public interests and for the general welfare of the community, reasonably, impartially and without confiscation.

Zoning laws are generally enacted for the purpose of dividing the territory of a municipality on a comprehensive plan into use districts, each with designated standards, with the object of conserving and assuring the common health, safety and welfare. The ordinances dealing with such matters are usually full of details, and even when drawn with the greatest of care they cannot possibly prescribe what ought to be done in exceptional cases, in which unnecessary or unreasonable hardship would result were such laws strictly applied. Boards of review are therefore created to deal with these borderline cases or unusual situations, with power in them to make special exceptions to the terms of the ordinances, not contrary to the public interests, so that the individual will not, in effect, be deprived of his property or subjected to unnecessary or unreasonable hardship.

In the instant case, the constitutionality and reasonableness of the statute and ordinances are not questioned. The statute provides that the town council "shall in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of any ordinance." The zoning ordinance that was passed by the town of Narragansett under this enabling act provides that when, in the judgment of the town council acting as a board of review, "the public convenience will be substantially served and the appropriate use of neighboring property will not be substan-

tially or permanently injured", the board may authorize special exceptions to the regulations of the ordinance, subject to appropriate conditions and safeguards. This ordinance is more liberal in its terms regarding exceptions than some others that have come to our attention. There is good reason for such liberality in the possible change of conditions to which certain sections of Narragansett, particularly the Point Judith section, are subject because of their geographical situation.

A literal and strict application of the zoning regulations in all cases is further negatived by the section of the ordinance permitting the board to allow "the location in a residence district of any use authorized in a Business D district," which is what the petitioners ask for in this case, upon petition to the board by the owners of seventy-five per cent of the area of all the land within a distance of six hundred feet from the land seeking the exception. If this provision of the ordinance were mandatory and binding upon the board it probably might be open, in a proper case, to a charge of unconstitutionality. See *Seattle Trust Co.* v. *Roberge,* 278 U. S. 116, *State of Washington* v. *Roberge,* 49 Sup. Ct. Rep. 50. But, in the instant case, it is not of that character.

The board of review of the town of Narragansett is charged, by both the statute and the ordinance, with the duty of determining facts from reasonably competent testimony and other proper means, such determination forming the basis for official action within the limits of reasonable discretion. In other words, the board is required to act judicially on facts lawfully ascertained. This court in *Sundlun* v. *Zoning Board of Review,* 50 R. I. 108, at page 117, says: "Public notice of the hearing of an application for exception to the provisions of a zoning ordinance is not given for the purpose of polling the neighborhood on the question involved but to give interested persons an opportunity to present facts from which the Board may determine whether the particular provision of the ordinance, as applied to the ap-

plicant's property, is reasonably necessary for the protection of public safety, public health, public morals or the general welfare in the proper sense. The Board should base their determination upon facts which they find to have been established instead of upon the wishes of persons who appear for or against the granting of the application." See also *Bilt-Wel Co.* v. *Dowling,* 5 N. J. Misc. 180.

A person who honestly believes that he would be unnecessarily or unreasonably restricted in the use of his land by the strict enforcement of the provisions of a zoning ordinance is entitled to come before a zoning board of review as a matter of right and not by way of permission or tolerance on the part of the board. Such a board should act upon the facts established at a hearing, and if, in addition thereto, the board desires to take into consideration other facts personally known to any of its members, such additional facts should be made known, so that they may become a part of the record. Furthermore, the decision of the board upon all the facts thus presented should bear a substantial relation to the common interests and general welfare.

The decision of a zoning board of review will not ordinarily be disturbed by this court, if, upon consideration of all the facts and surrounding circumstances, the decision is not clearly an abuse of discretion, for we will assume that such a public body will act fairly and with reason and not arbitrarily. *Norcross* v. *Board of Appeal,* 255 Mass. 177; *The People ex rel., Facey* v. *Leo,* 230 N. Y. 602. But this presumption in favor of the board's decision is not a shield against all inquiry as to its reasonableness or fairness. If, upon review, the decision of the board granting or refusing an exception to the zoning ordinance is clearly unreasonable or arbitrary, such decision will be set aside.

The statute in this case expressly authorizes a party aggrieved to prosecute a writ of *certiorari* in this court. By so doing, the legislature places upon us the duty of passing upon the reasonableness of the discretion exercised by the

board of review in any given case falling within the scope of the statute. We will be put to great unnecessary inconvenience in the performance of this duty in order to prevent injustice if any board, acting as the respondent did in the instant case, fails to keep a proper record of all the proceedings, including a fair report or reasonably accurate summary of the oral testimony or facts brought before them or otherwise known to them, upon which they are to base their decision. It is therefore proper procedure for zoning boards of review to keep at least a fair record of the proceedings, substantially in the manner specified. Such boards should also set forth the ground or grounds for their decision, as this court is entitled to know the basis for their action, so that it may determine whether their decision on the facts in evidence bears a substantial relation to the protection of the public interests.

We find nothing in the record before us that warrants a denial of the petitioners' request to use Parcels No. 1 and 2 for "a commercial bathing beach and commercial bath or boat houses or stores for retail trade or commercial recreation uses." The evidence indicates that the granting of the petitioners' request would be objectionable to a few property owners in that general neighborhood, at least two of whom are themselves engaged in business in that locality. But this is quite immaterial, when we consider the real purpose and intent of zoning laws. Such laws are not designed to protect some individuals to the detriment and hardship of others. The regulatory restrictions which a zoning law may properly enforce on the use of land by its owner must, in some substantial manner, tend to promote the common good of all the people in the community rather than to further the desires of a particular class, group or individual in that community.

The record in the instant case, including the transcript of the proceedings before the board, which is unquestioned by them, clearly shows that the uses to which the petitioners desire to put the land of parcels 1 and 2 under an exception

to the zoning ordinance are the only uses to which that land is reasonably adapted; that such land is almost entirely surrounded for at least six hundred feet by other land of the petitioners or of adjoining owners, notably the United States government, who interpose no objection to the granting of the petition; that the land in that general neighborhood is mostly undeveloped, with slight and sporadic demand for residential purposes; that there are business places and enterprises of one kind or another in the vicinity of parcels 1 and 2; and that such parcels are now used by trespassers, for bathing and picnic purposes, who, being unrestrained through lack of supervision, indulge in annoying practices and create unsanitary conditions.

The record in this case convinces us that the granting of the petitioners' request for an exception from the zoning regulations applicable to parcels 1 and 2 "subject to appropriate conditions and safeguards", which must be reasonable and not arbitrary, unnecessary or oppressive, will not affect the general public interests and common welfare, and that it will not "substantially or permanently" injure the appropriate use of neighboring property. The petitioners are not asking permission to maintain a nuisance as respondent's counsel suggest in their brief. They are only asking that they be permitted to use their land in a proper manner for the only purpose for which, according to the evidence, it is suitable or adaptable. The denial by the board of the petitioners' request under the circumstances in this case was a clear abuse of discretion.

It is therefore ordered that the decision of the board of review be reversed. It is the duty of the board to grant the petitioners' application, upon such conditions and safeguards, if any, as may be deemed reasonably necessary in the public interests. It is ordered that a copy of this opinion be transmitted to the board.

*Claude R. Branch,* for petitioners.

*Dennis J. Roberts,* Town Solicitor, *Frank F. Mason,* for respondents.