B. Thomas Potter *et al. vs.* Zoning Board of Review of the City of Cranston.

JULY 19, 1940.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a proceeding begun by a petition for a writ of *certiorari* to review a decision of the respondent board, by which it refused the petitioners' application thereto for an exception or a variation in the application of the zoning ordinance of the city of Cranston affecting the petitioners' property. The writ was issued to the board, and its records relating to the hearing and refusal of the petitioners' application are now before us.

The property affected is a parcel of real estate located at the southeast corner of Broad street, which in this vicinity runs about north and south, and Wheeler avenue, which runs from this corner a little south of east. The frontage of this parcel on Broad street is very nearly 200 feet. Its depth is 200 feet; its northerly line on Wheeler avenue is about 207 feet; and its rear line is about 146 feet.

It is the site of the Roger Williams Manor, an apartment house which was mainly destroyed by fire on June 18, 1939, leaving only its walls standing, to the height of two stories. After the fire the owners did not rebuild the structure but sold the property to one Horovitz, who in turn sold it to one Bomes; and he sold and conveyed it to the petitioners in January 1940. Broad street, in this vicinity, is a heavily-traveled highway with two car tracks.

The city of Cranston in January 1924 adopted a zoning ordinance, by which this property and all the property in the vicinity was zoned as a dwelling-house district. In 1927 or 1928, this ordinance was so amended that this parcel of land and some land opposite to it on Broad street were zoned for apartment house use and they have remained so. This zoning does not permit a use for business purposes.

On February 28, 1940 the petitioners filed with the respondent board their application for an exception or a variation in the application of the zoning ordinance so that they

would be permitted to repair the existing walls on the premises and to construct a one-story building covering 13,310 square feet of land, for use as a "store or stores for sale of merchandise at retail and use of the remainder of the lot for parking for customers." According to the plans this building would face on Broad street 25 feet away and there would be, in the rear of it, a parking lot approximately 50 feet by 150 feet, with an entrance from Wheeler avenue.

There was a hearing before the respondent board on this application and B. Thomas Potter and four real estate men testified in support of the application. Twenty-six residents on Broad street or Wheeler avenue protested in person against the granting of the petition, and a number of owners of land, in the vicinity made written protests.

Many other such owners were represented by attorneys, who appeared at the hearing and opposed the granting of the application and cross-examined the witnesses for the petitioners. But no evidence was introduced in opposition to the application. On the other hand, no owner of land in the vicinity, except the applicants, gave at the hearing any support to the application, in person, by attorney, or otherwise.

The evidence shows the following facts. Beginning at a point on the east side of Broad street four blocks north of Wheeler avenue, there are only dwelling houses until Wentworth avenue is reached, which is the first street north of Wheeler avenue. One of these houses, a little more than three blocks north of Wheeler avenue, has had its lower story extended forward to the sidewalk and is used for a "funeral home" as well as for residence purposes. Each of two other houses has a doctor's office in it and another one has a "beauty parlor".

In the block between Wentworth avenue and Wheeler avenue there is first a two-family house, next an office and

shop set far back from the street, then a three-family house, and lastly a series of small stores, which were erected and in use as such many years before there was any zoning ordinance. Next south of the petitioners' property is a building set well back from the street and used in part of a residence and in part as a "funeral home". Next is a vacant lot and then a residence. Next south, after crossing a street, there are two doctors' residences, each with an office, and then there is a block of stores.

On the opposite side of Broad street, beginning at the same distance north and ending at the same distance south, all the property is used for non-business purposes, except that in the block north of Wheeler avenue there is a gasoline filling station. Just across Broad street from the petitioners' property is an apartment house.

Apparently the improved property in this whole section of the city, away from Broad street, is used for residences, mainly of a very good class. As one of the witnesses for the petitioners testified, there is what he referred to as a "nice plat" of land recently laid out for residence purposes, having a frontage of about four or five hundred feet on Broad street, with its northeast corner opposite to the petitioners' property, and running a considerable distance westerly, at a greater width, towards Roger Williams Park.

There was testimony for the petitioners, in support of their application to the respondent board, that under the existing conditions the petitioners' property cannot be used to advantage for an apartment house or for ordinary residence purposes; and that its most advantageous use would be for business purposes. As presented to the board in the application and the plans submitted therewith, and in the testimony of B. Thomas Potter, one of the petitioners, they did not commit themselves in any way as to whether the building, when completed, would be divided into separate stores or be adapted to use as one large store.

At no time did they offer or suggest that their application be granted with a restriction that the building be divided by permanent partitions, so as to be usable for only a number of separate, comparatively small stores, independently operated. On the contrary, it is clear to us, from the application and the evidence and proceedings before the board, that their purpose is to have a building which will be well adapted for use as a "super-market", of a type which has been coming into use more and more in our cities, and in which retail business is conducted on a very large scale and customers are drawn from a very wide area, coming mainly in automobiles and carrying away their purchases.

The proposed use, in the rear of the proposed building, of a space 50 by 150 feet as a parking lot, with its entrance on Wheeler avenue, a purely residential street, a use for which they expressly ask permission in their application, points very convincingly to the same conclusion.

If the application were granted, it would be legal to use this space, to the east of which there appears to be a good residential section, as a parking lot, to and from which automobiles would be constantly moving during business hours. It is worthy of comment that the petitioners, at the hearing before the respondent board, did not offer to omit from their application this proposed use of this space.

In this connection it seems to us illuminating that one of the expert witnesses testified that if this property were to be used for a "super-market", such as two markets which he mentioned, he did not "think it would improve the community."

If the respondent board could legally grant the present application, it must be under one of the following provisions of section 24 of the zoning ordinance of the city of Cranston:

> "B.—Special exceptions.—When in its judgment the public convenience and welfare will be substantially

served and the appropriate use of neighboring property will not be substantially or permanently injured, the board of review may in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, authorize special exceptions to the regulations herein established as follows: . . .

"(8) In any district any use or building deemed by the said board to be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in such district; . . . .

"C.—Variance in cases of unnecessary hardship.— Upon application in a specific case, the board of review may authorize such variance in the application of the terms of this ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of this ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

After all the evidence had been submitted and arguments by counsel had been heard, the respondent board made the following decision, which is among the records certified to us, being preceded therein by a description of the petitioners' application:

"In this case this Board after viewing the premises and considering the evidence finds:

1. That the petitioner purchased the property in January, 1940 at which time it was zoned in an apartment house district.

2. That the proposed store or stores for the sale of merchandise at retail would not be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in such neighborhood.

3. That it is clear that there has been no change in the character of the neighborhood since the adoption of the zoning law so as to warrant the change sought.

4. That the proposed store or stores with the parking lot in the rear would substantially and permanently injure the neighboring property.

5. That there is no need for further stores in the neighborhood to adequately serve the requirements of said neighborhood.

6. There is no evidence of unnecessary hardship upon the petitioner who acquired the property as recently as January 1940.

Accordingly this Board is of the opinion that the public convenience and welfare will not be served by granting the petition, that on the contrary the appropriate use of neighboring property would be substantially and permanently injured thereby, that to grant the petition would be contrary to the public interest, and therefore finds that the application should be and it hereby is denied."

The petitioners complain of the above findings 1 and 6. They do not deny the facts stated in finding 1, but they argue as if the board, in finding 6, treated those facts as conclusive against the petitioners. It is obvious, however, that it was not doing so, but was merely treating those facts as circumstances to be considered in determining whether or not an exception or variance should be made in accordance with the petitioners' application. Such treatment was proper. See *Jenney Mfg. Co.* v. *Zoning Board of Review,* 63 R. I. 477, 484; 9 A. 2d. 705, at 708.

It is the well-settled law of this state that the decision of a zoning board of review, on an application of this sort, addressed to its discretion, will not be set aside unless it clearly appears that the board acted arbitrarily and abused its discretion. *Robinson* v. *Town Council of Narragansett,* 60 R. I. 422, at 436, 199 A. 308, at 314; *Jenney Mfg. Co.* v. *Zoning Board of Review, supra,* and cases cited therein.

We have considered the evidence in this case and, under all the circumstances, we are of the opinion that it does

not clearly appear that the respondent acted arbitrarily or abused its discretion in denying the petitioners' application.

The petition is denied and dismissed, and the decision of the respondent board is affirmed.

*Stuart H. Tucker, Huddy & Moulton,* for petitioners.

*Edward W. Day,* City Solicitor, for respondents.

*Arthur A. Thomas, Arthur J. Levy* and *Thomas L. Marcaccio,* for objectors.