EARLY ESTATES, INC. *vs.* HOUSING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.

OCTOBER 17, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

228

PAOLINO, J. This is a petition for certiorari to review the decision of the housing board of review of the city of Providence denying the petitioner's appeal from a compliance order of the director of the division of minimum housing standards pursuant to the provisions of chapter 1040 of the ordinances of said city, entitled the Minimum-Standards Housing Ordinance. Pursuant to the writ the board has certified the pertinent records to this court.

The petitioner owns a three-tenement house. Public laws 1956, chap. 3715, is the enabling act which authorizes the city of Providence to enact a minimum standards housing ordinance. The question presented by this petition is whether the act as written vests the city with power to enact an ordinance requiring petitioner to provide a rear hallway light in its premises and to install hot water facilities in the third-floor tenement, and, if so, whether such requirements are valid.

Sections 7 and 8 of article 4 of the act delegate to the city council power to enact minimum housing standards. Section 7 provides that: "The city council of the city of Providence is authorized to pass, ordain, establish and amend ordinances, rules and regulations for the establishment and enforcement of minimum standards for dwellings." In defining this general grant of power the legislature provided as follows in sec. 8:

"Without limiting the generality of the foregoing, such ordinances, rules and regulations may include:
"(a) Minimum standards governing the conditions, maintenance, use and occupancy of dwellings and dwelling premises deemed necessary to make said dwellings and dwelling premises safe, sanitary and fit for human habitation."

Pursuant to the provisions of the enabling act the city council enacted chapter 1040, the Minimum-Standards Housing Ordinance. The provisions involved in the instant

proceeding are subsecs. 8.8, entitled "Lighting of Public Spaces," and 6.4, entitled "Hot Water." Subsection 8.8 provides that:

> "Every public hall and common stairway used primarily for egress or ingress in connection with two or more dwelling units shall be supplied with a proper amount of natural or electric light at all times; provided that such public halls and common stairways in structures containing not more than three dwelling units shall be deemed to have fulfilled such requirement if they are properly supplied with conveniently located switches, controlling an adequate electric lighting system which may be turned on when needed; and provided that all common stairways not used primarily for egress or ingress in all dwellings shall be properly supplied with such switches."

Subsection 6.4 provides that:

> "Within three (3) years following the effective date of this Ordinance every kitchen sink, lavatory basin, and bathtub or shower bath required under the provisions of Subsections 6.1, 6.2 and 6.3 of this section shall be properly connected to hot as well as cold water lines."

The petitioner concedes that subsecs. 8.8 and 6.4, if valid, apply to its premises. However, with respect to the requirements of 8.8, it contends that under the common law of this state as declared in *Capen* v. *Hall*, 21 R. I. 364, and followed by other later cases, there is no duty on a property owner to provide artificial light or switches in common hallways and stairways. The petitioner also contends that the council, absent legislative authority, is without power to change the common law relating to hallway lights; that the act as written contains no language vesting the council with such power; and that consequently subsec. 8.8 is invalid and the director's compliance order requiring such hallway light is null and void.

After careful consideration it is our opinion that the enabling act clearly vests the council with power to legislate

on the subject of lighting for common hallways and stairways. The legislature therein declared in art. 2, sec. 2, that "the establishment of minimum standards for dwellings is essential to the protection of the public health, safety, morals and general welfare." Such language clearly indicates a legislative intent to vest in the council power to require minimum standards dealing with factors relating to safety.

Again, in carrying out such intent, the legislature provided in art. 4, sec. 8, that the ordinances which the council was empowered to enact might include, without limiting the generality of the language in sec. 7, minimum standards governing the conditions, maintenance, use and occupancy of dwellings and dwelling premises deemed necessary to make said dwellings and dwelling premises safe, sanitary and fit for human habitation. The use of such language makes it abundantly clear that the legislature clearly intended to vest the council with power to require hallway lights as a safety measure. We are satisfied that the council had legislative authority to enact subsec. 8.8 and that the requirements therein are reasonable and therefore are a proper exercise of the police power. See *Palombo* v. *Housing Board of Review,* 92 R. I. 421, 169 A.2d 613. The cases cited by petitioner are not in point and require no discussion.

We come now to a consideration of the provisions of subsec. 6.4 requiring the installation of hot water facilities in the third-floor tenement of petitioner's property. Its principal contentions with respect thereto are that the act is silent on the subject of hot water; that there is no language therein vesting the council with power to legislate on the subject; and that therefore the council acted in excess of its jurisdiction.

At this point we are not concerned with the wisdom or desirability of the requirements in question. It may very well be that hot water facilities in a dwelling are convenient

and desirable, but the only question before us is whether the act as written vests the council with power to require the installation of such facilities. The act contains no express grant of such power.

In art. 2 the legislature declares that it has found that there exist in the city of Providence numerous dwellings which are substandard due to "uncleanliness" and lack of adequate "sanitary" facilities, and that the establishment of minimum standards for dwellings is essential to the protection of the public health, safety, morals and general welfare. Under sec. 8 the council is vested with power to enact minimum standards governing the conditions, maintenance, use and occupancy of dwellings deemed necessary to make said dwellings safe, sanitary and fit for human habitation.

In the absence of an express grant of legislative authority, the determination of the issue raised by petitioner's instant contentions depends wholly upon the question whether the statutory language discussed in the preceding paragraph indicates a clear legislative intent to delegate the power in question. In other words, is the use of such language equitable to a grant of power to the council empowering it to require the installation of hot water facilities? Is the requirement of hot water facilities related to the "uncleanliness" of dwellings and dwelling premises? Is such requirement related to sanitation or public health and welfare?

Keeping in mind that chap. 3715 involves a delegation of power relating to *minimum* housing standards, can it reasonably be said that by empowering the council to enact minimum standards necessary to make dwellings and dwelling premises "fit for human habitation," the legislature meant that the installation of hot water facilities is necessary to achieve the desired purpose? Can it be said that dwellings and dwelling premises lacking such facilities are unfit for human habitation?

Prior to the enactment of chap. 3715, in the absence of contractual obligations to the contrary there was no duty on a property owner to provide hot water facilities under the law of this state. After careful consideration it is our opinion that the act contains no language indicating a legislative intent to create such a duty or to vest the council with power to enact an ordinance requiring the installation of hot water facilities. The requirement of those facilities is not necessarily related to sanitation or public health and welfare, nor is such requirement reasonably necessary to make dwellings and dwelling premises fit for human habitation. We cannot read into the act that which is not there.

From what we have stated, it is clear that in enacting subsec. 6.4 the council exceeded its jurisdiction. That portion of the ordinance is therefore invalid and the decision of the board based thereon is in error. In view of this result it becomes unnecessary to discuss or consider the petitioner's other contentions.

The petition for certiorari is granted insofar as it relates to the decision of the board with respect to the order requiring the installation of hot water facilities and that part of the board's decision is quashed. Insofar as it relates to the decision of the board with respect to the rear hallway light the petition is denied and dismissed and to such extent the writ heretofore issued is quashed. The records certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

ROBERTS, J., dissenting. I am unable to agree with the conclusion of the majority of the court that the action of the city council in providing in chap. 1040, subsec. 6.4, of the city ordinance that in all dwelling units kitchen sinks, lavatory basins, and bathing facilities be connected with hot as well as cold water lines was in excess of the authority conferred upon it by the pertinent provisions of the enabling act, P. L. 1956, chap. 3715, art. 4, sec. 8 (a).

The enabling act confers upon the city council authority

to establish by ordinance minimum standards for dwellings. In art. 4, sec. 8 thereof, after expressly stating it to be the legislative policy that the generality of the grant of such authority is not limited thereby, the legislature provided that such an ordinance could set out certain specific provisions, among which were included "Minimum standards governing the conditions, maintenance, use and occupancy of dwellings and dwelling premises deemed necessary to make said dwellings and dwelling premises safe, sanitary and fit for human habitation."

Clearly, it was the intention of the legislature to confer upon the city council comprehensive authority to provide minimum standards for dwelling premises. The subsequent enumeration of norms to be observed by the city council in its exercise of the police power thus delegated to it was not intended to diminish the scope of that authority. Because the legislature intended to bestow upon the city council such a broad power to provide for minimum dwelling standards, I am persuaded that the legislature also intended to leave to the discretion and judgment of the local legislature the nature of the precise minimum standards to be established. If the specific requirements thus prescribed as minimum standards by the city council bear a reasonable relationship to the public health, morals, and welfare, the enactment thereof constituted a valid exercise of the police power delegated to it.

I am unable to perceive that the action of the city council requiring the connecting of kitchen sinks, lavatory basins, and bathing facilities to hot water lines was violative of the norms set out in art. 4, sec. 8 (a), of the enabling act. Nor do I think it reasonable to conclude that the providing of lines which would serve to give the occupant of the dwelling access to an appliance that would, if utilized, make available to him a supply of hot water may not be deemed necessary to promote sanitation in dwelling premises or to render such premises fit for human habitation.

That a definite relationship exists between the maintenance of an adequate condition of sanitation in a community and the availability of access to a supply of hot water in the dwelling units in that community has been given judicial recognition in *City of Newark* v. *Charles Realty Co.*, 9 N. J. Super. 442. In that case, on the basis of the evidence adduced, the court found that where a supply of hot water is not readily available in dwellings by reason of a failure to have access to facilities for supplying such hot water, the danger of production and spread of disease in the community tends to increase. Without intending to unduly extend this dissenting opinion, I quote in part from that case at page 452: "For instance, as to gastro-intestinal diseases, there have been 'outbreaks of that disease because hot water was not available for that purpose,' the testimony instancing as typical, the spread of such disease throughout the city from a restaurant, an employee of which fails to properly wash his hands due to the lack of hot water at home, and thus spreads this diarrheal disease." While it may be possible to maintain adequate sanitation in a community where there is a lack of readily available supplies of hot water for use in personal hygiene by the residents thereof, it is manifestly clear that a high degree of sanitation would be promoted and more effectively maintained when access to adequate supplies of hot water is provided for in the dwellings in that community.

Neither do I believe that the requirement of subsec. 6.4 for the connecting of hot water lines to kitchen sinks, lavatory basins, and bathing facilities may not reasonably be deemed necessary to render a dwelling fit for human habitation. To attribute to the legislature an intention to use the phrase "fit for human habitation" as meaning any structure that suffices to give one shelter from the elements so as to survive the vicissitudes and hardships of life in a climate such as ours is to attribute to the legislature an intent to have its enactment result in an absurdity. It is my be-

lief that a dwelling fit for human habitation within the contemplation of the legislature was a dwelling so built and equipped as to afford the occupants thereof access to those conveniences and amenities that, in this day of social enlightenment, are considered as the responsibility of the property owner to the welfare of the community. When the city council included within the ordinance provisions requiring the connecting of kitchen sinks, lavatory basins and bathing facilities with hot water lines, it was acting well within the norm inherent in the legislative phrase "fit for human habitation."

To so construe the pertinent section of the enabling act does not, in my opinion, have the effect of bringing the legislation within the purview of any constitutional inhibition. Such a construction does not obscure the clear purpose of this legislation, that is, to confer upon the city council a comprehensive authority with which to act effectively to eradicate existing blighted areas and to prevent any further spread of such blighted areas within the community. Neither does such construction nullify the validity of the norms prescribed therein by the legislature for the guidance of the city council. That there is a reasonable relationship between these purposes and the health, morals, and welfare of the public is self-evident, in my opinion, and the legislature in its enactment thereof is engaged in a valid exercise of the police power. *Robinson* v. *Town Council,* 60 R. I. 422. Because I take this view, it is my opinion that the petition for certiorari should have been denied and dismissed and the decision of the respondent board affirmed.

FROST, J., concurs in the dissenting opinion of Mr. Justice Roberts.

ON MOTION FOR REARGUMENT.

OCTOBER 27, 1961.

PER CURIAM. After our opinion in the above case was filed the respondent board asked and received permission

to file a motion for reargument. Pursuant thereto such a motion has been filed setting out therein certain reasons on which it bases its contention that justice requires a reargument of the case.

The majority of the court have considered those reasons and are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*Fergus J. McOsker*, for petitioner.

*William E. McCabe,* City Solicitor, *Harry Goldstein,* Assistant City Solicitor, for City of Providence.