DECISION
Appellant, Robert A. Famiglietti ("Appellant"), seeks reversal of a January 23, 2001 decision of the Zoning Board of Review for the Town of North Kingstown ("Zoning Board"). In its decision, the Zoning Board granted the application of Defendant Forge Construction Management, Inc. ("Applicant") for a special use permit to allow construction of a four bedroom single family dwelling on a nonconforming lot substandard as to frontage. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel 
The subject premises are designated as Lot 6 on Tax Assessor's Map 103 in the Town of North Kingstown, Rhode Island ("property"). The Applicant filed an application for a special use permit to allow construction of a single family dwelling on this 6.85 acre parcel of land, which was nonconforming in that it lacked frontage on a public street. In addition, access to the lot is available only from Rollingwood Drive, a public street, across a fifteen foot wide easement, which was conveyed to a prior owner of the property in 1975. On December 12, 2000, the Zoning Board held a hearing at which it received evidence and heard testimony regarding the application. The Zoning Board closed the public portion of the hearing, referred the matter to the Technical Review Committee ("Committee") for an advisory opinion and continued the hearing to January 9, 2001. (Tr. of December 12, 2000 hearing at 42.)
On January 4, 2000, the Committee wrote "[a]fter discussing the issues regarding the application and reviewing the submitted materials the Technical Review Committee issued no objection to the granting of the requested special use permit provided that the concerns of the Committee were adequately addressed." (Memo. from Aubin to Zoning Board dated 1/4/01.) In addition, the Committee "respectfully requested that any relief the Zoning Board of Review deems appropriate to grant be conditioned on satisfactory resolution of the specific concerns expressed by the Town Engineer and Fire Marshal." Id. On January 9, 2001, the Zoning Board approved a special use permit "to allow construction of a single-family dwelling on a legal non-conforming lot with substandard frontage, conditioned upon the approval implementation and maintenance of a development plan as approved by the Department of Planning and Development." (Tr. of January 9, 2001 hearing at 11.)
Appellant brought a timely appeal of the Zoning Board's January 9, 2001 decision. Appellant argued that the Zoning Board erred in finding that the standards and criteria set out in the Town of North Kingstown Zoning Ordinance ("ordinance") were satisfied and supported issuance of the special use permit. In addition, Appellant maintained that § 21-311(h) of the ordinance, requiring a "specific finding" that the criteria for permitting exceptions to frontage and depth requirements, was not satisfied in this instant case. On November 21, 2001, this Court issued a decision remanding the matter to the Zoning Board "for findings of fact and conditions that render support for [the Zoning Board's] approval of the special use permit sought by Applicant for construction of a four bedroom single family dwelling on a nonconforming lot substandard."Famiglietti v. Forge Construction Management, Inc., C.A. No. W.C. 01-103, November 21, 2001, Gagnon, J. at 6. On March 12, 2002, the Zoning Board reviewed the record generated in the instant case. Two weeks later, on March 26, 2002, the Zoning Board issued a Second Decision wherein it delineated the findings of fact and conditions upon which it based its grant of the Applicant's request for a special use permit to allow a four bedroom single family dwelling to be built on the property.
In his appeal, Appellant insists that the Zoning Board's decision to grant the relief requested by the Applicant was clearly erroneous in light of the record evidence. Appellant further argues that the Zoning Board violated the ordinance provisions by failing to make the "specific findings" required under §§ 21-311(h)(1) and (2). Moreover, Appellant asserts that the Zoning Board failed to meet the standards required for granting a special use permit, as set forth in § 21-15 of the ordinance. Appellant requests that this Court reverse the Zoning Board's decision.
 Standard of Review 
The standard of review for this Court's appellate consideration of the Decision is outlined in G.L. 1956 § 45-24-69(D), which states:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, this Court must examine the entire certified record to determine whether substantial evidence exists to support the finding of the board. Salve Regina College v. Zoning Bd.of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd.of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board is to weigh evidence, with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of the zoning board and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quotingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). It is only if the record is "completely bereft of competent evidentiary support" that a board of appeal's decision may be reversed. Sartor v.Coastal Resources Management Council of Rhode Island, 434 A.2d 266, 272 (R.I. 1981).
 The Special Use Relief
Appellant argues that the Zoning Board violated the ordinance provisions by failing to satisfy the requirements of §§ 21-311(h)(1) and (2) prior to granting the relief requested by the Applicant. Appellant contends that the Zoning Board failed to obtain approval of the site plan for the proposed development from the Department of Planning and Development as required by § 21-311(h)(1) of the ordinance. Furthermore, Appellant contends that the Zoning Board's decision demonstrates, on its face, the failure to satisfy § 21-311(h)(1) because the Zoning Board conditioned its grant of the special use permit on "[a]pproval of a development plan for the proposed single family dwelling by the Department of Planning and Development. Said development plan shall address the issues raised in the Town Engineer's memo dated December 22, 2000." (First Decision at 1-2.) Thus, Appellant argues the Zoning Board has acted in violation of the ordinance provisions and requests that this Court reverse the Zoning Board's decision.
The Zoning Board maintains, however, that the requirements of §§ 21-311(h)(1) and (2) of the ordinance were satisfied prior to its approval of the special use permit sought by the Applicant. The Zoning Board insists that before it granted the special use permit, the Department of Planning and Development approved the required site plan and a determination was made that there was an adequate means of access to the proposed dwelling. The Zoning Board asserts that Appellant has confused a "site plan" with the "development plan" upon which it conditioned its grant of the special use permit. (Def.'s Memo. of Law at 4.) Accordingly, the Zoning Board requests that this Court affirm its decision granting the Applicant the special use permit to construct a single family dwelling on a nonconforming lot substandard as to frontage.
Sections 21-311(h)(1) and (2) of the ordinance provides that:
 "(h) . . . the zoning board of review may grant a special exception authorizing the erection of a single-family dwelling on such lot in accordance with the provisions of section 21-15 only if, in addition to the findings required by such subsection it is also established by specific finding that:
 (1) The siting of the dwelling and any accessory building to be erected on such lot together with the means of access to the dwelling site will be in accordance with a site plan which has, prior to the granting of such special exception, been approved by the department of planning and development, to ensure that the findings made in accordance with section 21-15 will be implemented; and
 (2) There is an adequate means of vehicular and utility access to such dwelling site from a public road either over the lot itself or by virtue of an easement conveyed to the owner or former owner thereof for the benefit of such lot and all subsequent owners and occupants thereof."
In the instant matter, the Second Decision issued by the Zoning Board and the record evidence belie the contention made by Appellant that the Zoning Board acted contrary to the requirement of § 21-311(h)(1) of the ordinance. In its Second Decision, the Zoning Board wrote that the Department of Planning and Development ("Department') "reviewed and approved the proposed site plan prior to the granting of the special use permit." (Decision at 3.) The Zoning Board references the submitted site plans which bore the signature of Department Director Marilyn F. Cohen, indicating approval of the site plan on December 12, 2000. Id. Moreover, the record contains a memorandum issued by the Department to the Zoning Board regarding the Applicant's request for relief. In the memorandum, the Department wrote that it:
 "ha[d] reviewed the submitted plans and f[ound] them acceptable in accordance with Section 21-311(h)(1). The application appears to comply with the criteria for the grant of Special Use Permit identified in Sec. 21-15. The development of a single family dwelling on the subject parcel would be consistent with the development in the immediate area. The Department of Planning and Development has no objection should the Zoning Board of Review deem it appropriate to grant the requested relief." (Mem. dated December 12, 2000 at 3.)
This memorandum evidences that the Zoning Board did not violate § 21-311(h)(1). The Zoning Board obtained Department approval of the site plans submitted by Applicant for the special use permit to build a single family dwelling on the property. However, the Zoning Board did attach certain conditions to its grant of the relief requested by the Applicant.
The Zoning Board acted well within its discretion when it conditioned its grant of the special use permit on Department approval of a development plan that would address the issues raised by the Town Engineer. The Rhode Island Supreme Court has long recognized that it is within the discretion of the zoning board of review to impose conditions and safeguards upon grants of variances or special exceptions. Olevsonv. Narragansett Zoning Board, 71 R.I. 303, 44 A.2d 720 (1945); Morris v.Zoning Board of Review, 52 R.I. 26, 155 A. 654, 655 (1931). However, such conditions or safeguards must be reasonable, not arbitrary, unnecessary or oppressive. Robinson v. Town Council of Narragansett, 60 R.I. 422,199 A. 308, 315 (1938). Finally, such conditions or restrictions on the use of land must appear as of record and be clearly stated in the documents. Town of Warren v. Frost, 111 R.I. 217, 219, 301 A.2d 572, 574 (1973). In the instant case, the Zoning Board imposed on its approval of the special use permit conditions and restrictions that would address the grading, drainage and access problems raised by the Town Engineer. In imposing these conditions or safeguards, the Zoning Board complied with its duty under § 21-311(h)(1) of the ordinance to gain prior approval of the site plan from the Department.
Appellant also contends that the Zoning Board failed to make the specific finding that there is an adequate means of vehicular and utility access to the dwelling site as required under § 21-311(h)(2) of the ordinance. Appellant argues that the only means of vehicular and utility access to the Property will be through the fifteen foot wide easement which runs from Rollingwood Drive. Appellant insists that the development of the easement to address the grading, drainage and access problems associated with this dwelling site would exceed the contemplated use of the easement. Alternatively, the Zoning Board maintains that the requirement of § 21-311(h)(2) of the ordinance was satisfied with the approval of the site plan, which indicated that a 12-foot wide driveway would be constructed in the easement area. (Def.'s Mem. of Law at 5.)
The easement provides to Applicant "[t]he perpetual right to pass and trespass at all times and for all purposes, by foot or by vehicle, over a certain right of way fifteen (15) feet in width." The Appellant argues that development of the easement will supersede and enlarge the purpose for which the easement was granted in the first place. "It is well established that where the easement is created by grant and is not limited in its extent or scope by the terms of the grant, it is available for the reasonable uses to which the dominant estate may be denoted."Sharp v. Silva Realty, Inc., 86 R.I. 276, 285, 134 A.2d 131, 136 (1957). The Rhode Island Supreme Court has written that: "[m]isuse of an easement right is not sufficient to constitute a forfeiture, waiver, or abandonment of such right. The right to an easement is not lost by using it in an unauthorized manner or to an unauthorized extent, unless it is impossible to sever the increased burden so as to preserve to the owner of the dominant tenement that to which he is entitled, and impose upon the servient tenement only that burden which was originally imposed upon it." Frenning v. Dow, 544 A.2d 145, 146 (R.I. 1988) (quoting Penn BowlingRecreation Centers, Inc. v. Hot Shoppes, Inc., 179 F.2d 64, 66 (D.C. Cir. 1949)).
In its Second Decision, the Zoning Board found that "there is an adequate means of vehicular and utility access to the proposed dwelling site from a public road via the fifteen (15) [foot] right of way to the subject parcel from Rollingwood Drive." (Second Decision at 3.) To make this determination, the Zoning Board relied upon the original subdivision plans for Heritage Hills Development, the subdivision that comprises the area surrounding the proposed dwelling site, and the copy of the easement. Id. The record demonstrates that the members of the Zoning Board took the opportunity during the December 12, 2000 hearing to determine whether there was adequate means of vehicular and utility access to the dwelling site. The following exchange indicates that the Zoning Board was attempting to satisfy the requirement of § 21-311(h)(2):
 "MR. SEAVEY: Yes, the Town is responsible for fire protection and if you need emergency/medical, is this big enough so that they can get down, turn around and get out, this easement?
 MR. KOTTA: It's wide enough obviously to pass. Provisions would be made to turn around in the site. They could not obviously turn around in the 15 foot right of way.
 MR. SEAVEY: It doesn't have to be big enough to turn around. When they get to the destination, they have to be able to leave, right?
 MR. KOTTA: Yes, yes, provisions should be made. Obviously a car is going to have to turn around every day.
 MR. SEAVEY: A car is one thing and a fire engine ladder is another.
 MR. KOTTA: There is plenty of room. Almost seven acres there, so it's no a problem."
Moreover, in its Second Decision, the Zoning Board stated that it relied on the January 4, 2001 memorandum issued by the Technical Review Committee to the Zoning Board in which the Committee wrote:
 "[t]he Fire Marshall noted that large emergency vehicle access could be limited by the proposed grade of the right of way however he did not object to the granting of the special use permit. The Fire Marshall further indicated that the NFPA standards would require the installation of an adequate turn around due to the length of the proposed right of way. The Fire Marshall also felt that any future owner of the subject parcel should be aware of the potential for limited emergency access." (Mem. dated 1/4/01 at 1.)
With respect to utility access, the Committee stated "[a] question also arose as to the potential to site utility poles in the right of way at its current width. The Director of Public Works has indicated that in his opinion the poles could be installed without guy wires within the current limits of the easement." Id. at 2. Finally, at the January 9, 2001 hearing, the access issue was discussed by Town Senior Planner John J. Aubin who stated:
 "[t]he fire marshal indicated that an emergency vehicle would in all likelihood not be able to negotiate a 20 percent grade at the beginning of the right of way, but . . . he didn't object to the granting of the special use permit. He felt that should be made aware to any potential purchaser of the property. Most likely it would raise an insurance issue for the purchaser of that property, if a house was to be built there." (Tr. at 3.)
Thus the record evidences that the Zoning Board made the determination, as required by § 21-311(h)(2) of the ordinance, that there is an adequate means of vehicular and utility access to such dwelling site by virtue of an easement.
Finally, Appellant asserts that the Zoning Board did not satisfy the statutory requirements of § 21-15 of the ordinance, which sets forth the criteria for the grant of a special use permit. Appellant insists that the Zoning Board's decision contains "summary conclusions" and fails to elaborate on the basis for the decision. The Zoning Board states that its decision was based on evidence that was entered into the record in satisfaction of the standards set forth in § 21-15 of the ordinance.
Section 21-15 of the ordinance provides that in order to grant a special use permit the Zoning Board must enter evidence to the satisfaction of the following standards into the record of the proceedings:
 "(1) The requested special use permit will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based;
 (2) That the special use permit is reasonably necessary to serve the public convenience and welfare;
 (3) That the granting of a special use permit will not pose a threat to the drinking water supply;
 (4) That the use will not disrupt the neighborhood or the privacy of abutting landowners by excessive noise, light, glare or air pollutants;
 (5) That sewage and waste disposal into the ground and the surface water draining from the proposed use will be adequately handled on site;
 (6) The traffic generated by the proposed use will not cause undue congestion or introduce a traffic hazard to the circulation of the area;
 (7) That accessory signs, off-street parking and loading area and outdoor lighting are designed and located in a manner which complements the character of the neighborhood.
 (8) In addition to the above criteria, in the case of a special permit, the board shall require evidence that the requested use will have a lesser undesirable impact upon the surrounding area than the preceding nonconforming use."
In the instant matter, the First Decision issued by the Zoning Board was conclusory in nature and prompted this Court to order that the matter be remanded to the Zoning Board for findings of fact and conditions that supported the grant of the special use permit sought by Applicant. After remand, the Zoning Board issued a Second Decision wherein "factual" findings were made, and the proper legal principles were applied. First, the Zoning Board found that granting the special use permit satisfied § 21-15(1)(a)(1) of the ordinance because the proposed development would neither alter the general character of the surrounding area nor impair the purpose or intent of the comprehensive plan upon which the ordinance is based. (Second Decision at 1.) The Zoning Board noted that the area in which the single family dwelling was to be built was comprised of single family residential developments on significantly smaller parcels than the proposed development. Id. In addition, the Zoning Board found that there would be no impairment of the comprehensive plan since the subject parcel was designated for "high density residential with 20,000 to 40,000 square foot house lots" while the proposed single family dwelling was to be situated on a lot comprised of 6.85 acres. Id. Next, the Zoning Board determined that granting the special use permit would serve the public convenience and welfare and thereby satisfy § 21-15(1)(a)(2) of the ordinance because such action would add to the town's housing stock. Id. at 2. The Zoning Board further found that § 21-15(1)(a)(3) of the ordinance was satisfied since the Applicant submitted an approved RIDEM ISDS permit and "a single family dwelling on a 6.85 acre lot does not pose a threat to groundwater supply." Id. The Zoning Board also concluded that granting the special use permit would not disrupt the neighborhood or the privacy of abutting landowners by excessive noise, light, glare or air pollution. Id. The Zoning Board observed that the "there is no other active land use with less impact than a single family residential use" and the noise, light, glare and air pollution that would be generated by such a dwelling would not be excessive. Id. With respect to § 21-15(a)(5), the Zoning Board found that the sewage, waste disposal and surface water drainage from the proposed use would be adequately handled on site. Id. The Zoning Board relied upon the uncontradicted testimony of the Applicant's engineer and the approved RIDEM ISDS permit for the proposed septic system to arrive at this conclusion. Id. Finally, in its First Decision, the Zoning Board stated that the Applicant had entered evidence into the record to the satisfaction of the standards in § 21-15(a)(7).[1] (First Decision at 2.) However, in its Second Decision, the Zoning Board did not specifically discuss whether the accessory signs, off street parking, loading area and outdoor lighting were designed and located in a manner which complements the character of the neighborhood. Nonetheless, the Zoning Board had evidence before it that the "development of a single family dwelling on the subject parcel would be consistent with the development in the immediate area." (Mem. from Department to Zoning Board dated December 12, 2000 at 3.) Thus, in its Second Decision, the Zoning Board, referring to evidence that the various ordinance standards in § 21-15 were satisfied, set forth "findings of fact and reasons" for granting the special use permit to construct a single family dwelling on a lot nonconforming as to frontage. See Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2000) (quoting Irish Partnership v. Rommel, 518 A.2d 356, 358 (R.I. 1986)).
 Conclusion 
After a review of the entire record, this Court finds that the Zoning Board's decision is not clearly erroneous and did not violate ordinance provisions. In addition, the Zoning Board did not act in excess of its authority when it granted the relief requested, a special use permit to construct a single family dwelling on property nonconforming as to frontage. Substantial rights of the Appellant have not been prejudiced. Accordingly, the decision of the Zoning Board is affirmed.
Counsel shall submit the appropriate order for entry in accordance with this decision.
[1] The Zoning Board mistakenly refers to the inapplicability of § 21-15(a)(7) to the subject application given that "there is no preceding nonconforming use of the undeveloped subject parcel." (Second Decision at 1.) However, the proper citation to the section being referenced by the Zoning Board is § 21-15(a)(8), which section has since been deleted from the ordinance.